# CIRCUIT COURT OF THE CITY OF NORFOLK

Transportation District
Commission

· v.

Amalgamated Transit Union
Local 1177

August 8, 2000

Case No. CH00-1053

BY JUDGE CHARLES D. GRIFFITH, JR.

For the reasons stated below, the Court will grant the Defendant's Motion to Compel Arbitration. Prior to October 1, 1999, transportation service in the Hampton Roads area was provided by two separate companies, the Peninsula Transportation District Commission ("Pentran"), and the Tidewater Transportation District Commission ("TRT"). However, on October 1, 1999, The Transportation District Commission of Hampton Roads ("HRT") assumed all the duties of both Pentran and TRT, and currently operates transportation services in the entire Hampton Roads area.

When Pentran and TRT provided service, the companies were parties to separate collective bargaining agreements that governed labor relations with the companies' employees. Since October 1, 1999, HRT has been operating the transportation system under those separate agreements. The two groups of employees now desire to become one bargaining unit, represented under a common collective bargaining agreement. The Transportation Union representing the groups has submitted a demand for arbitration to the American Arbitration Association, in accordance with the arbitration provisions found in the Pentran and TRT agreements.

Both the Pentran and the TRT agreements state that the parties will submit to arbitration only those controversies which constitute "labor disputes" as defined by the agreement itself. Although the agreement defines "labor

dispute" broadly, HRT insists that the controversy at issue is not a "labor dispute," and even if it is, that the issue is not ripe for arbitration. At the present time, HRT has filed a motion for declaratory judgment in the matter. Both HRT and the transportation union ("ATU") have filed injunction suits regarding arbitration of the dispute.

Under applicable law, the matter in question constitutes a "labor dispute" under the terms of the contracts. Both the Pentran and the TRT agreements were entered into pursuant to the terms of Section 13(c) of the United States Urban Mass Transportation Act of 1964, 49 U.S.C. § 5333(b). The terms of this legislation and of the Pentran and TRT contracts dictate that a "labor dispute" shall be broadly construed and shall include "any differences or questions that may arise between the parties, including the making or maintaining of collective bargaining agreements," and "the terms to be included in such agreements." See Plaintiff's Bill of Complaint at 3-4.

The phrase "labor dispute" has been defined as to include "any controversy concerning terms, tenure, or conditions of employment . . ." See N.L.R.B. v. Leslie Metal Arts Co., 509 F.2d 811 (6th Cir. 1975), citing N.L.R.B. v. Washington Aluminum Co., 370 U.S. 9, 82 S. Ct. 1099 (1962). It has also been defined to include the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment. See N.L.R.B. v. Mackay Radio & Telegraph Co., 304 U.S. 333, 58 S. Ct. 904.

The types of cases wherein courts have determined that a controversy did not constitute a "labor dispute" determined that the objectives of the parties involved were not labor related. For example, in Sachs v. Local Union No. 46, 454 F.2d 879 (4th Cir. 1972), the Fourth Circuit decided a case wherein a subcontracting company was hired to install prefabricated pipes, which the employees refused to install. Based upon a "work preservation clause" in the collective bargaining agreement requiring hand fitted pipe, the union argued that the controversy over the refusal constituted a "labor dispute."

The court noted the importance of determining the objectives of the employees, stating that "inquiry must be made into whether, under all the surrounding circumstances, the union's objective was preservation of work for [the contractor's employees], or whether the agreements and boycott were tactically calculated to satisfy objectives elsewhere." See Sachs, 454 F.2d at 882, citing National Woodwork Manufacturers' Assn. v. N.L.R.B., 354 F.2d 594, 597 (7th Cir. 1965). The court held that there was no labor dispute, stating that "the mark of a labor dispute is the presence of economic adversaries. It is highly improbable that a bona fide labor dispute exists if both

employer and employees stand to benefit from increased work on the job site." *See Sachs,* 454 F.2d at 883.

The question of whether the former Pentran and TRT employees should comprise one bargaining unit instead of two is a "difference" which "arises between the parties," as under the Mass Transportation Act, and is clearly related to labor relations. Under the clear language of the Pentran and TRT contracts, and under the Act, this dispute directly involves the "making or maintaining of collective bargaining agreements." Unlike *Sachs,* the dispute in the instant case involves a direct controversy between economic adversaries and is not merely erroneously predicated upon the terms of the collective bargaining agreement in order to force arbitration. There is no suggestion that the Union has attempted to conceal the true nature of the controversy in order to make a dispute totally unrelated to labor relations appear differently.

Because the controversy in question involves a "labor dispute," the Court will order that the dispute proceed to arbitration. Whether or not the controversy is ripe and any other matters related to the merits of the arbitrable issues are to be decided during the course of arbitration.